

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00350-CV

MICHELLE LATRAY AS RECEIVER OF THE ASSETS OF CLIFTON BOATRIGHT FOR THE BENEFIT OF JUDGMENT CREDITORS W.L. ROBERTS, DANA ROBERTS, ERIN LEIGH ROBERTS, AND KATELYN ROBERTS GONZALES, APPELLANT

V.

COLONY INSURANCE COMPANY
D/B/A COLONY SPECIALTY INSURANCE CO., APPELLEE

On Appeal from the 77th District Court
Limestone County, Texas
Trial Court No. 31,528-A; Honorable Patrick Simmons, Presiding

November 4, 2021

## MEMORANDUM OPINION ON MOTION FOR REHEARING

Before PIRTLE and PARKER and DOSS, JJ.

By her appeal, Appellant, Michelle Latray, acting as a receiver on behalf of certain judgment creditors, argued the trial court erred in its summary judgment rulings because Appellee, Colony Insurance Company, had both the duty to defend and the duty to indemnify her judgment debtor, Clifton Boatright, and that none of the policy

exclusions asserted by Colony were applicable.  By opinion dated January 11, 2021, this court affirmed the judgment of the trial court.[1]

Pending before this court is *Appellant's Motion for Rehearing* by which Latray brings three issues.  First, she argues that both this court's and the trial court's interpretation of the facts deprived her of the right to a jury trial regarding the conduct of Clifton Boatright.  She asserts also that this court "ignored other acts other than dumping."  Second, Latray contends this court should rehear this matter to allow her to assert reasons for remand to the trial court for a jury determination as to whether Boatright's actions were intentional or negligent.  Third, Latray complains that this court failed to follow precedent regarding determination of the duty to defend relying on facts of the case rather than pleading allegations.  While we will deny *Appellant's Motion for Rehearing*, we will withdraw our opinion and judgment dated January 11, 2021, and in lieu thereof, substitute the following opinion and judgment.[2]

### BACKGROUND

This appeal arose from an insurance coverage dispute stemming from Boatright's dumping of debris onto property owned by W.L. Roberts and others (hereafter "the Roberts").  The City of Kosse hired Boatright to demolish the town's old high school.  Their agreement included Boatright's removal and disposal of the debris resulting from the demolition. Their agreement also required Boatright to obtain a policy

---

[1] *Latray v. Colony Ins. Co.*, No. 07-19-00350-CV, 2021 Tex. App. LEXIS 168 (Tex. App.—Amarillo Jan. 11, 2021, no pet. h.) (mem. op.).

[2] Originally appealed to the Tenth Court of Appeals, sitting in Waco, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

of liability insurance prior to the commencement of demolition. An agent for Colony issued a policy covering the planned operations.

David Garrett, a friend of Boatright's and a long-time tenant[3] on the Roberts' property, asked Boatright if he could take some of the debris to use for purposes of erosion control. According to Boatright, he mistakenly believed the property on which Garrett wished to place the debris belonged to Garrett when, in fact, the property belonged to the Roberts. Boatright did not inquire of Garrett whether he owned that property. Neither Garrett nor Boatright sought the Roberts' permission before placing the debris on the property. Further, neither sought a permit to dump the debris nor did either man consult an expert regarding erosion control.

Thereafter, Garrett and Boatright took debris[4] from the demolition site and placed it on the Roberts' property. At times, Boatright borrowed his mother's dump truck to move larger loads of the debris to the property. By the end of the project, Garrett and Boatright had placed forty tons of debris on the Roberts' property. The two also damaged fencing as they entered and exited the property, causing over $8,000 in property damages. When W.L. Roberts discovered the debris on his property, he filed suit against Boatright and others for illegal dumping and damage to his land.[5] Roberts subsequently obtained a judgment against Boatright for $50,000, plus $309 in court costs. After the judgment became final, the court also issued a *Turnover Order*

---

[3] Boatright testified Garrett had lived at that home where the debris was deposited for "nearly twenty years."

[4] The debris included brick and metal rebar.

[5] W.L. Roberts alleged damages including property damage, cleanup costs, debris removal costs, soil testing, soil analysis, environmental studies, and attorney's fees.

pursuant to section 31.002 of the Texas Civil Practice and Remedies Code, appointing Latray as a receiver, to take possession of non-exempt property for the purpose of liquidating that property for the benefit of Boatright's judgment creditors. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (West 2020).

As required by his demolition contract, prior to the commencement of demolition, Boatright obtained a liability insurance policy issued by Colony. After the judgment against Boatright was returned and the *Turnover Order* was issued, Latray sought relief under the insurance policy issued to Boatright by Colony. When Colony denied that coverage, Latray filed this suit against Colony for breach of contract, violation of the Deceptive Trade Practices Act ("DTPA"),[6] violation of section 541 of the Texas Insurance Code,[7] and breach of the common law duty of good faith and fair dealing. Colony argued that because Boatright's actions were intentional, the policy did not cover Boatright's acts and thus, it had no duty to defend nor indemnify. Colony filed an amended traditional motion for summary judgment on that basis. Latray also filed a motion for partial summary judgment arguing Colony owed Boatright a duty to defend as a matter of law because, although the conduct was intentional, the alleged negligence was "accidental" because Boatright was operating under the misconception that he had authority to dump the debris on the Roberts' property. She asserted that other acts committed by Boatright were negligent acts and as such, Colony had both a duty to defend and indemnify. The trial court granted Colony's motion for summary judgment and denied Latray's motion for partial summary judgment.

---

[6] TEX. BUS. & COM. CODE ANN. § 17.46 (West 2020).

[7] TEX. INS. CODE ANN. §§ 541.051-541.061 (West 2009).

**ANALYSIS**

**STANDARD OF REVIEW**

We review a trial court's ruling on a summary judgment motion under a *de novo* standard of review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

A party-defendant moving for traditional summary judgment bears the burden of proving that no genuine issue of material fact exists on at least one essential element of the plaintiff's cause of action and that it is entitled to judgment as a matter of law. *Mejia-Rosa v. John Moore Servs.*, No. 01-17-00955-CV, 2019 Tex. App. LEXIS 6405, at *11-13 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.) (citing TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)). In that regard, a matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *Mejia-Rosa*, 2019 Tex. App. LEXIS 6405, at *12 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)). If the movant meets its burden, the burden then shifts to the nonmovant to raise a fact issue precluding summary judgment. *Mejia-Rosa*, 2019 Tex. App. LEXIS 6405, at *12 (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).

When, as here, parties file cross-motions for summary judgment, each party in support of its motion necessarily takes the position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter of law. *SW Bell Tel. Co. v.*

*Combs,* 270 S.W.3d 249, 259-60 (Tex. App.—Amarillo Oct. 28, 2008, pet. denied) (citing *City of Pflugerville v. Capital Metro. Transp. Auth.*, 123 S.W.3d 106, 109 (Tex. App.—Austin 2003, pet. denied)). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides and determines all questions presented. *Combs,* 270 S.W.3d at 260 (citing *Valence Operating Co.*, 164 S.W.3d at 661; *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

Further, when the summary judgment order does not specify the grounds on which it was granted, as is the case here, the appealing party must demonstrate that none of the proposed grounds are sufficient to support the judgment. *Mejia-Rosa*, 2019 Tex. App. LEXIS 6405, at *13 (citing *West v. SMG*, 318 S.W.3d 430, 437 (Tex. App.— Houston [1st Dist.] 2010, no pet.)). Therefore, we will affirm a summary judgment ruling if any of the grounds asserted in the motion are meritorious. *Mejia-Rosa*, 2019 Tex. App. LEXIS 6405, at *13 (citations omitted).

### ISSUE ONE—DUTY TO DEFEND

Through her first issue on appeal, Latray argued the trial court erred in not granting her partial motion for summary judgment concerning Colony's duty to defend. Colony disagreed, arguing that because there was no coverage, no duty to defend arose. In the *Motion for Rehearing*, Latray argues she is entitled to have the trial court's ruling on the issue of the duty to defend reheard or reconsidered as a matter of law because this court is to look only to the pleadings and the policy under the eight corners rule to determine the duty to defend. Latray contends that in the original petition

through her third amended petition, she alleged negligent acts. She says those acts are "very relevant" under Colony's duty to defend because the "very fact negligence is alleged" triggers the duty to defend as a matter of law. While Colony asserts the underlying insured's actions were intentional, Latray argues that even if true, the underlying facts are irrelevant as to a duty to defend.

Whether an insurance carrier owes a duty to defend a claim being made against an insured under an insurance policy is a question of law that we review *de novo*. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). Initially, the insured bears the burden of establishing coverage under the terms of the insurance policy in question. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015); *StarNet Ins. Co. v. RiceTec, Inc.*, 586 S.W.3d 434, 444 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)). To avoid liability and a duty to defend, the insurer then has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage. *Gilbert Tex. Constr., L.P.*, 327 S.W.2d at 124. *See* TEX. INS. CODE ANN. § 554.002 (providing that in a "suit to recover under an insurance . . . contract, the insurer . . . has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded").

Specifically, the acts sued on must fall within the policy coverage before a duty to defend arises. *Curb v. Tex. Farmers Ins. Co.*, No. 11-03-00406-CV, 2005 Tex. App. LEXIS 4480, at *7-9 (Tex. App.—Eastland June 9, 2005, no pet.) (mem. op.). An

7

insurer does not owe a duty to defend an insured unless the petition in the underlying lawsuit contains allegations of fact which fall within the scope of coverage provided for in the policy of insurance. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburg*, *Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997)).

To determine the existence of a duty to defend, we apply the "eight corners rule," also known as the "complaint allegation rule[.]" *Curb*, 2005 Tex. App. LEXIS 4480, at *7 (citation omitted) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997); *Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 939 S.W.2d at 141). Our focus is on the allegations in the petition that show the origin of the damages; the focus is not on the legal theories alleged. *Curb*, 2005 Tex. App. LEXIS 4480, at *8 (citing *Cowan*, 945 S.W.2d at 821-22). We consider the allegations in the petition in light of the policy terms without considering either the truth or falsity of the allegations or what the parties know or believe the true facts to be. *Curb*, 2005 Tex. App. LEXIS 4480, at *8 (citing *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965)). The same is true even if there has already been a legal determination of the facts. *Curb*, 2005 Tex. App. LEXIS 4480, at *8 (citation omitted). We do not look outside the pleadings and the policy of insurance in our assessment of whether there is a duty to defend. *Id.* (citation omitted). If a petition does not allege facts that fall within the scope of coverage, an insurer is not required to defend a suit against its insured. *Id.* (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex.1994)). However, any doubt as to whether the insurer has a duty to defend should be resolved in favor of the insured. *Archon Invs. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *King v. Dallas Fire Ins. Co.*, 85

S.W.3d 185, 186 (Tex. 2002); *Collier v. Allstate Cnty. Mut. Ins. Co.*, 64 S.W.3d 54, 59 (Tex. App.—Fort Worth 2001, no pet.)).

Generally, the insurer is obligated to defend if there is, potentially, an action alleged within the policy coverage, even if the allegations do not clearly show there is coverage. *Archon Invs.*, 174 S.W.3d at 339 (citations omitted). The alleged underlying facts determine coverage, not the enumerated causes of action. *Id.* (citations omitted). A duty to defend any of the claims requires the insurer to defend the entire suit. *Id.* (citations omitted). However, an insurer's duty to defend its insured is separate and distinct from its duty to indemnify, which is not based on the pleadings in the underlying lawsuit but instead on the facts that establish liability according to the provisions of the insurance contract. *Id.* (citation omitted). Furthermore, it arises only after the insured has been adjudicated legally responsible for damages in a lawsuit by judgment or settlement. *Id.* The "duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify; but an insurer may have a duty to defend without being ultimately shown to have a duty to indemnify." *Id.* (citations omitted).

We find the court's decision in *Curb* to be illustrative in determining whether Colony had a duty to defend Boatright as it pertains to the dumping of debris on the Roberts' property. In *Curb*, a high school student and some of his friends strung fishing line around the courtyard at school with the intent of luring their friends there so that they would trip over the line. *Curb*, 2005 Tex. App. LEXIS 4480, at *3-4. After the students strung the fishing line, they went to look for their friends but got distracted when they found them and forgot about the fishing line. The next night, a teacher left

9

the building and tripped over the line. She was injured and sued the student and his father for compensation for those injuries. The student sought to have his parent's homeowner's insurance company provide a defense. The insurance company argued that because the conduct in question was intentional, there was no "accident" and, therefore, no coverage, and because there was no coverage, it had no duty to defend. The trial court granted the insurance company's motion for summary judgment. On appeal, the appellate court agreed, finding liability did not arise as the result of an accident because the teacher's pleadings alleged the student's acts were exactly what he intended to do. *Id.* The court went on to say that "[t]o be accidental, an effect could not reasonably have been anticipated from the conduct that produced it, and the insured 'cannot be charged with the design of producing'" the effect. *Curb*, 2005 Tex. App. LEXIS 4480, at *11 (citing *Mid-Century Ins. Co. of Texas v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999)). Thus, because the injury caused by the student was of the type that would "ordinarily follow" from his conduct "and the injuries could be 'reasonably anticipated from the use of the means, or an effect[,]'" the summary judgment evidence conclusively established that the insurance company had no duty to defend the student. *Curb*, 2005 Tex. App. LEXIS 4480, at *11. Simply stated, there was no accident and, therefore, no insured occurrence. *Id.*

We reach the same conclusion here as it pertains to Boatright's dumping of debris on the property. The policy in question defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Accident" is not defined in the policy. However, the Texas Supreme Court has stated that an injury is accidental if "from the viewpoint of the insured, [it is] not the

10

natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury." *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 663 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Lindsey*, 997 S.W.2d at 155) (quoting *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976)). Under this rubric, two factors bear on the determination of whether an insured's action constitutes an accident: (1) the insured's intent and (2) the reasonably foreseeable effect of the insured's conduct. *Lennar Corp.*, 200 S.W.3d at 663 (citation omitted).

The pleadings show Boatright clearly intended to move the debris to the Roberts' property and leave it there. Because the damage to the property was the very presence of the debris on the property, the damages were a reasonably foreseeable result of Boatright's intentional conduct. Furthermore, the damages claimed were of a type that ordinarily flowed from the conduct, not damages of an accidental nature. The terms of the policy establish that it does not cover intentional acts of this nature. Here, the summary judgment evidence established, as a matter of law, that the placement of the debris on the property was no accident and, therefore, no "occurrence" under the terms of the policy. Because there was no occurrence, there was no coverage concerning the dumping of debris.

However, the same is not true with regard to the claims brought by Latray concerning other negligent acts of Boatright, particularly the damage to the fencing that occurred as Boatright and Garrett entered and exited the Roberts' property. Latray alleged that Garrett, as agent for Boatright, was negligent in operating a commercial

11

vehicle (a dump truck) without authorization of the owner, and among other acts, knocked down fencing as he drove onto and off the property, causing over $8,000 in damage.  She also notes some of the damage was caused by Garrett's truck and trailer. Garrett and Boatright intended to use the dump truck and truck and trailer to move the debris onto the property.  However, they did not intend to damage the fencing on the property as they did so.  As such, Latray contends, the result of damaged fencing was not a reasonably foreseeable effect of using the vehicles to move debris from the school to the Roberts' property.

Nevertheless, the insurance policy here included an auto exclusion.  That provision reads as follows:

**Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a)  Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the sate where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."

Latray argues the auto exclusion does not apply "to the completed operations covered under the policy because the damage was caused by negligent actions and decision making . . . the dump truck itself didn't cause the accidental property damages, but flawed, negligent disposal operations, and negligent decision making. The very fact [Boatright] operated a commercial dump truck without permission, or a CDL, was failure to use ordinary care and to act as a reasonably prudent person in attempting to complete his operations." Latray also applies this reasoning to the "unloading and loading" exclusion and says the policy language is ambiguous. We disagree with each of Latray's assertions.

Colony argues the auto exclusion quoted above "extinguishes [its] duty to defend and duty to indemnify Boatright." We agree. As support for its argument, Colony notes

13

the exclusion applies to the "use of an auto" and points us to the Texas Supreme Court's opinion in *Lindsey*, 997 S.W.2d at 157. There, the Court stated as follows:

> [f]or an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Lindsey*, 997 S.W.2d at 157 (citations omitted). *See also Lyons v. State Farm Lloyds & Nat'l Cas. Co.,* 41 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A fourth factor is also to be examined: "whether a person is using a vehicle as a vehicle depends not only on his or her conduct, but on his or her intent." *Tucker v. Allstate Tex. Lloyds Ins. Co.,* 180 S.W.3d 880, 887 (Tex. App.—Texarkana 2005, no pet.).

As noted by Colony, the damages in this matter arose from the use of an "auto," i.e., the dump truck, that Boatright admitted he borrowed from his mother and that he admitted he operated to dump the debris onto the Roberts' property. He said he took approximately fifteen dump truck loads of about two and a half tons each from the site to the Roberts' property. Thus, Boatright's intent was to use the dump truck as a dump truck. The damages to the land and to the fencing were a direct result of Boatright's use of the dump truck, an "auto" as set forth in the auto exclusion provision of the policy. Thus, each of the requisites of the test set forth in *Lindsey* are satisfied here.

Latray also makes a secondary argument that some of the damages were caused by Garrett's truck and trailer and that the trailer would be a covered exclusion, although she argues his negligent actions would be covered as a volunteer worker. We

first note that the policy defines "auto" to mean "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." Therefore, the exclusion would apply to Garrett's truck and trailer. Colony responds to Latray's additional arguments, stating (1) that Garrett is not a volunteer worker as defined in the policy, (2) the portion of the policy Latray references related to medical coverage payments, not the provision at issue here, and (3) that there is no judgment against Garrett and thus, Colony has no duty to him in any event. Based on our review of the pleadings and the policy, we agree with each of Colony's responses.

Additionally, while Latray argues the auto exclusion did not apply because Boatright did not own the dump truck and was not authorized to use it, neither of those facts negate the application of the exclusion. Indeed, the exclusion applies to "autos" that are "operated by or rented or loaned to any insured." Likewise, the exclusion does not require that the operator of the "auto" be authorized to use it and even if it did, Boatright testified his mother permitted him to use the dump truck. Latray does not make any similar arguments regarding Garrett's truck and trailer.

Latray's other arguments supporting her assertion that the exclusion did not apply also fail. She argues the exclusion did not apply because the damages of which she complained were not caused "solely" by the use of the dump truck but also through the use of Garrett's truck and trailer. The exclusion requires only that the property damage is of the sort "arising out of" the use of the "auto." The Texas Supreme Court has defined the phrase "arising out of" to mean "originating from, having its origin in, growing out of or flowing from." *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex. 2011). It has also said that "'arise out of' means that there is simply a

15

'causal connection or relation,' *Mid-Century Insurance Co.*, 997 S.W.2d at 156 (Tex. 1999), which is interpreted to mean that there is but-for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). A review of the pleadings and the policy before us certainly show the complained-of damages satisfy these definitions of "arising out of."

Latray further argues that the auto exclusion does not apply because the damages were caused by Boatright's negligence, including his negligence in failing to obtain a permit, his negligence in failing to obtain a commercial driver's license, or his negligence through failing to supervise Garrett. Even assuming all acts causing the damages were negligent, the auto exclusion explicitly states, "[t]his exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured." Therefore, we cannot agree with Latray's contention.

Lastly, Latray argues "[t]he damage was not excluded under this section and is ambiguous at best, see policy language[.]" While she identifies the page number of the record on which the policy language may be found, she does not identify which provision is ambiguous nor does she explain how any provision is ambiguous. Further, she does not assert an alternative interpretation of the exclusion. As such, Latray has waived this aspect of her argument and we will not address it. Tex. R. App. P. 38.9

16

(requiring a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).  We overrule Latray's first issue.

### ISSUE TWO—DUTY TO INDEMNIFY

Similar to the position taken in her first issue, by the second issue, Latray contended the trial court erred in granting Colony's motion for summary judgment because there was a contested fact issue concerning whether Boatright's actions constituted an "occurrence" under the policy.  Latray argued Boatright's actions were negligent in nature rather than intentional, and thus, the policy provided coverage and the company owed a duty to indemnify.  Colony contended the evidence showed Boatright's actions were intentional and there was no "occurrence" under the policy, thus establishing there was no coverage and no duty to indemnify.

The issue of whether Colony had a duty to indemnify is a legal issue to be reviewed *de novo*.  *Great Am. Lloyds Ins. Co. v. Mittlestadt*, 109 S.W.3d 784, 786 (Tex. App.—Fort Worth 2003, no pet.).  Under the terms of the policy here, for there to be an "occurrence," there must have been an "accident," causing property damage.  As the parties note, two lines of cases regarding "occurrence" have evolved in this area.

The first line of cases, the "*Maupin* line," pertains to coverage of claims against an insured for damage caused by the insured's intentional torts.  *See Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973); *KB Home v. Emps. Mut. Cas. Co.*, No. 2-06-383-CV, 2008 Tex. App. LEXIS 771, at *17-20 (Tex. App.—Fort Worth Jan. 31, 2008, no pet.) (mem. op.) (citing *Gehan Homes, Ltd. v. Emps. Mut. Cas. Co.*, 146 S.W.3d 833 (Tex. App.—Dallas 2004, no pet.); *Federated Mut. Ins. Co. v. Grapevine*

*Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)). Colony argues that this line of cases applies here.

In *Maupin*, the plaintiffs alleged that the insured acted intentionally, wrongfully, and willfully, when it took fill material from the plaintiffs' property without their consent. The appellate court held that there was no "occurrence" because the conduct was alleged to be intentional. *Maupin* involved a contract between the State of Texas and Maupin, part of which entailed the acquisition of "borrow material" for roadway fills. *Maupin*, 500 S.W.2d at 634. Maupin contracted with a third party for the purchase of that material. *Id.* Maupin then removed about 5,744 cubic feet of the material from the property. *Id.* at 635. It was later determined that the person with whom Maupin had contracted for removal of the material did not own the property but rather, was a tenant-in-possession. *Id.* While Maupin argued there was no intent to injure the landowners and that the removal of the material from the property was done under the authority of a contract, the court found that intent was irrelevant. *Id.* The court noted that the damage complained of there was the removal of the large amount of material from the property without the owner's consent. Thus, Maupin "did exactly what they intended to do. The fact that they did not deal originally with the owners of the property was the mistake or error. There was no insurance against liability for damages caused by mistake or error." *Id.* Further, the court concluded Maupin's act in trespassing on the property did not constitute an accident; Maupin did what they intended to do by removing the material from the property. *Id.* Furthermore, the fact that Maupin was unaware of the true owner of the property had "no bearing upon whether the trespass was caused by accident. [Maupin's] acts were voluntary and intentional, even though the result or injury may

have been unexpected, unforeseen and unintended." *Id.* Consequently, the Court determined there was "no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question. The damage was not an accident or occurrence within the meaning of this policy." *Id.* at 635.

The second line of cases comes from the Texas Supreme Court's decision in *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex. 1967). In that case, the Court found that the term "accident," as used in the insurance policy at issue, included negligent acts causing damages that were "undesigned and unexpected." *Id.* at 400. Likewise, subsequent cases have held that the terms "accident" and "occurrence" include damages that are unexpected, unforeseen, or undesigned as a result of an insured's intentional, but negligent behavior. *KB Home*, 2008 Tex. App. LEXIS 771, at *19 (citing *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F.Supp.2d 693, 699 (S.D. Tex. 2002)). It is this line of cases Latray seeks to apply to the insurance policy in question in this proceeding, arguing that the damages to the Roberts' property were unexpected and unforeseen based on Boatright's mistaken belief that he had permission to deposit the debris on the property.

As is pertinent to the case now before us, one such case interpreting this second line of cases is the decision by the Dallas Court of Appeals in *Hallman v. Allstate Ins. Co.*, 114 S.W.3d 656 (Tex. App.—Dallas 2003), *rev'd on other grounds*, 159 S.W.3d 640 (Tex. 2005), wherein the court observed:

> There is not an accident when the action is intentionally taken and performed in such a manner that it is an intentional tort, regardless of whether the effect was unintended or unexpected. However, there is an accident when the action is intentionally taken but is performed negligently

19

and the effect is not what would have been intended or expected had the deliberate action been performed non-negligently.

*Id.* at 660-61 (citations omitted). Similarly, in 2004, in *Gehan Homes, Ltd.*, 146 S.W.3d at 842, the Dallas Court of Appeals analyzed the situation before it in light of the language in *Hallman* and determined that the insurers did not establish as a matter of law that the petition failed to allege an "occurrence" under the terms of the policy where the "intentional act of performing the contract was allegedly performed negligently. The purported damage was an unexpected and undesigned consequence of Gehan's alleged negligence." *Id.* at 843 (citations omitted).

We do not agree the same is true here regarding the dumping of debris. The undisputed evidence in the record before us shows Boatright intended to move the debris onto the Roberts' property and he intended to leave it there. Furthermore, there were no allegations that Boatright was negligent in the performance of those acts. The damage sustained was the consequence of the simple presence of the debris on the Roberts' land. This is similar to, albeit the reverse of, the removal of material from the land in *Maupin.* There, Maupin intended to remove the material from the property and the damage to the land was the removal of that material—under the mistaken belief they had permission to do so—resulting in a finding of no accident and no insurance coverage against liability for damages caused by that mistake or error. *Maupin*, 500 S.W.2d at 635. Nothing in the record indicates Boatright's intentional acts were performed negligently, as in *Orkin*. Rather, the contract with the City of Kosse required Boatright to demolish the old high school and remove the debris. In the performance of that contract, Boatright intentionally removed the debris and placed it on the Roberts'

20

property—under the mistaken belief he had permission to do so—resulting in damage to the property from the mere presence of the debris itself, not some unintended consequence of Boatright's intentional act.

Additionally, Boatright's conduct is distinguishable from the conduct of the exterminator in *Orkin* who intentionally sprayed the rice mill but did so in a negligent manner, resulting in unexpected damages to the rice. *Orkin Exterminating Co.*, 416 S.W.2d at 400-01. Had that contract been performed properly, the rice would not have been damaged at all. Conversely, in this case, no matter how carefully Boatright performed the acts he did, the same damages would still have occurred. Because the damages sustained in this cause were not proximately caused by an error or mistake and not by any negligent acts, Boatright's conduct and resultant liability are far more akin to the contractor in *Maupin* than it is the exterminator in *Orkin.* As such, under the pleadings and facts of this case, we find the *Maupin* line of cases to be controlling.

We have reviewed the summary judgment record and there is nothing in the record which would show Boatright's actions were anything other than intentional. Typically, whether an insured intended the injury to occur is a question of fact. *Curb*, 2005 Tex. App. LEXIS 4480, at *13-14 (citation omitted). However, there are instances where the actions of an individual are intentional as a matter of law. *Id.* The origin of the injury in this case was Boatright's deposit of debris on the Roberts' land. "When a result is the natural and probable consequence of an act or course of action, it is not produced by accidental means. The natural result of an act is the result that ordinarily follows, maybe reasonably anticipated, and ought to be expected." *Id.* This is an objective standard. *Id.* Further, a "person is held to intend the natural and probable

results of his acts even if he did not subjectively intend or anticipate those consequences." *Id.* (citing *Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834 (Tex. App.—Dallas 1997, no pet.)). Thus, Boatright acted intentionally even if he did not intend the result, i.e., to injure the Roberts. According to Boatright, he believed Garrett to be the owner of the land and that Garrett was using the debris for erosion control. According to Garrett, he believed he was doing the right thing by using the debris for erosion control. But, none of that is relevant to whether Boatright's actions were intentional and thus not covered by the terms of the policy. Based on the record before us and reviewing the evidence in the requisite light, we find there was no "occurrence" under the policy and consequently, no coverage as it pertains to the dumping of the debris on the Roberts' property.

That said, as with the duty to defend, the same is not true with regard to Latray's claims of negligence with regard to other negligent acts like the damages to the fencing. As we have discussed in our analysis herein, the conduct of moving and dumping the debris was an intentional act. But, as Latray alleged in her pleadings, the damage to the fencing on the Roberts' property occurred through the negligent use of the dump truck and Garrett's truck and trailer during ingress and egress to the property and during dumping of the debris. Garrett and Boatright caused damage to the fencing by their use of the vehicles but the damage to the fence was "unexpected, unforeseen, or undesigned" as a result of their intentional but negligent use of the vehicles. This is akin to the negligent spraying that occurred in *Orkin*. *See Orkin Exterminating Co.*, 416 S.W.2d at 400-01. In that case, if the spraying had been performed properly, there would have been no damage to the rice. Here, if Garrett and Boatright had properly

used the vehicles to enter and exit the property and while dumping the debris, the fencing would not have been damaged. However, as we discussed at length in our analysis of Colony's duty to defend, the auto exclusion included in the policy applies here and therefore, there was no coverage and Colony has no duty to indemnify Boatright. *See Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.) (finding no duty to indemnify for same reasons there was no duty to defend). *See also Yorkshire Ins. Co. v. Diatom Drilling Co.*, 280 S.W.3d 278, 283 (Tex. App.—Amarillo 2007, pet. denied) (rendering take-nothing judgment against alleged insured due to policy exclusion). We overrule Latray's second issue.

### REMAINING ISSUES

Latray also brought claims of violations of the DTPA, Texas Insurance Code, and common law duty of good faith and fair dealing. However, in her motion for rehearing, she does not identify any specific error in this court's opinion with regard to those claims. We thus will not further address those remaining issues.

### CONCLUSION

We deny *Appellant's Motion for Rehearing* for the reasons stated herein and affirm the judgment of the trial court.


Patrick A. Pirtle
Justice